**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ISABEL VIKTORIA STEHN,

        Plaintiff

      v.

GREGORY CODY,

        Defendant

Civil Action No. 11-1036 (CKK)

**MEMORANDUM OPINION**
(November 20, 2014)

Upon reviewing the parties' [31] Pretrial Statement, the Court requested additional

briefing from the parties as to several issues raised in the Pretrial Statement.  *See* Mem. Opinion,

ECF No. [22]. Although the parties' supplemental briefing was not styled as motions *in limine*,

the Court addresses those arguments as it would with respect to motions *in limine* given that the

briefing pertains to objections raised by the parties in the Pretrial Statement and to associated

evidentiary concerns.[1] The primary evidentiary issues addressed in this Memorandum Opinion

relate to (A) portions of Defendant's deposition regarding his fine payment, (B) the police report

of the underlying incident, (C) Defendant's answers and amended answers to interrogatories,

(D) the medical and hospital records of Plaintiff, and (E) video recordings portraying the

---

[1] The Court's analysis focuses on the following submissions: the parties' Pretrial Statement, ECF No. [31]; Def.'s Mem. in Supp. of Def's Objection to Pl.'s Use of Video, ECF No. [33] ("Def.'s Video Mem."); Def.'s Mem. in Supp. of Objection to Pl.'s Identification of Exhibits Labeled Answers to Interrogatories & Supp. Answers to Interrogatories of Def. as Evid., ECF No. [34] ("Def's Interrogatory Mem."); Pl.'s Supp. Br. on Pretrial Statement, ECF No. [35] ("Pl.'s Supp. Br."); Def.'s Response in Opp'n to Pl.'s Supp. Br. on Pretrial Statement, ECF No. [38] ("Def.'s Response"); Pl.'s Response to Def.'s Supp. Br. on Pretrial Statement, ECF No. [39] ("Pl.'s Response"); and Pl.'s Reply to Def. Cody's Response to Pl.'s Supp. Br. on Pretrial Statement, ECF No. [40] ("Pl.'s Reply"). The Court also references Pl.'s Statement of Material Facts Not in Genuine Dispute, ECF No. [21-3] ("Pl.'s Statement"), and Def.'s Statement of Material Facts in Dispute, ECF No. [22] at 3-5 ("Def.'s Statement")

intersection where the collision occurred. The Court provides this analysis in order to inform the scheduled December 1, 2014, status hearing. At a later date, the Court will address the proposed jury instructions, including the parties' related arguments with respect to the doctrines of negligence per se, contributory negligence, and last clear chance.

## I. BACKGROUND

The factual allegations and legal claims at issue in this case are set forth fully in the August 26, 2013, Memorandum Opinion denying Plaintiff's motion for summary judgment. In short, on June 11, 2008, at approximately 5:45 p.m., Plaintiff Isabel Stehn was crossing Pennsylvania Avenue at the intersection of Pennsylvania Avenue and 19th Street in Northwest Washington, D.C. Pl.'s Statement ¶ 1; Def.'s Statement ¶¶ 1-4. Plaintiff testified that she left the northeast corner of the intersection when the pedestrian signal facing her began to display the visual "Walk" signal. Pl.'s Statement ¶ 2. As Plaintiff proceeded southbound through the crosswalk, she was struck by a car driven by Defendant, who was making a left turn onto Pennsylvania Avenue during a green light. Pl.'s Statement ¶¶ 5, 13; *see* Pl.'s Statement Ex. B, Ex. C. The parties dispute the precise timing of the crossing. *See* Def.'s Statement ¶ 16. After Plaintiff was taken away in an ambulance, Defendant was ticketed at the scene of the accident by a police officer for "Failure to Yield Right of Way to a Pedestrian." Pl.'s Statement ¶¶ 8, 23-24. Defendant ultimately paid the fine required by this ticket. *Id.* at ¶ 25-26.

On August 26, 2013, the Court denied Plaintiff's [21] Motion for Summary Judgment on the Issue of Liability. In a Memorandum Opinion issued that date, ECF No. [22], the Court concluded that facts essential to a finding that Plaintiff *was not* contributorily negligent remained in dispute. The Court denied plaintiff's motion because Plaintiff's contributory negligence is a dispositive issue under the governing law of the District of Columbia. *See Jarrett v. Woodward*

*Bros., Inc.*, 751 A.2d 972, 985 (D.C. 2000) ("The District of Columbia is one of the few

jurisdictions in which the claimant's contributory negligence can act as a complete defense to the

defendant's liability for negligence."). The parties filed their Pretrial Statement on May 9, 2014, and

submitted additional briefing at the request of the Court on various evidentiary issues raised in the

Pretrial Statement. A pretrial conference is scheduled for December 1, 2014.

## II. LEGAL STANDARD

The briefing with respect to the several evidentiary issues before the Court share the

purpose of motions *in limine*: to narrow the evidentiary issues at trial. The Federal Rules of

Evidence generally permit the admission of "relevant evidence"—*i.e.,* evidence having "any

tendency" to make the existence of any fact of consequence more probable or less probable—

provided it is not otherwise excluded by the Rules, the Constitution, or an Act of Congress, and

its probative value is not "substantially outweighed" by the danger of unfair prejudice, confusion

of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or the

needless presentation of cumulative evidence. Fed. R. Evid. 401-403. In deference to their

familiarity with the details of the case and greater experience in evidentiary matters, district

courts are afforded broad discretion in rendering evidentiary rulings, a discretion which extends

to assessing the probative value of the proffered evidence and weighing any factors against

admissibility. *Sprint/United Mgmt. Co. v. Mendelsohn,* 552 U.S. 379, 384 (2008).

In light of the limited purpose of motions in *limine*, they "should not be used to resolve

factual disputes," which remains the "function of a motion for summary judgment, with its

accompanying and crucial procedural safeguards." *C & E Servs., Inc. v. Ashland Inc.,* 539

F. Supp. 2d 316, 323 (D.D.C.2008). Rather, parties are charged with demonstrating why certain

categories of evidence should (or should not) be introduced at trial and directing the district court

to specific evidence in the record that would favor or disfavor the introduction of those particular

categories of evidence. *See U.S. ex rel. El–Amin v. George Washington Univ.,* 533 F. Supp. 2d

12, 19 (D.D.C.2008). With these principles in mind, the Court turns to the evidentiary disputes

presented by the parties.

### III. DISCUSSION

Although the Court takes this important opportunity to resolve the parties' pretrial

evidentiary disputes, and certainly does not foresee a need to revisit the issues addressed herein,

the Court nonetheless recognizes that it cannot predict with absolute certainty how events will

unfold at trial. Accordingly, this Memorandum Opinion sets forth the Court's analysis based

upon the record as it now stands and the arguments articulated by the parties in their respective

motions. As evidence is presented at trial, however, the parties may find it desirable to raise

again discrete evidentiary issues addressed here. To be clear, they are not absolutely foreclosed

from doing so. Where appropriate, a party wanting to revisit an evidentiary ruling should,

conspicuously, bring the matter to the Court's attention and be prepared to summarize the

Court's original ruling and explain why that ruling should be modified in light of new evidence

or a change in circumstances. *However, the parties are cautioned that this is not an invitation to

recycle old arguments.* With these caveats, the Court proceeds to the merits of the various

disputes.

### A.  Deposition Testimony with Respect to Ticket Payment

Plaintiff seeks to offer a portion of Defendant's testimony in his deposition that pertains

to his statements regarding his payment of a fine resulting from the traffic ticket that he received

for failing to yield in the incident that is the subject of this lawsuit. In particular, Plaintiff seeks

to admit Defendant's response to a line of questioning about whether any "points" were

associated with the ticket. In response, Defendant stated, "Well, once I paid the fine, that was the end of the – that was admitting that, you know, I was at – the failure to yield." Pretrial Statement at 10. Defendant objects to the admission of this statement, arguing that it is unduly prejudicial and that it is a backdoor attempt to offer evidence of the payment of the fine levied by the ticket – even if that evidence would not be otherwise allowed. The Court notes that Plaintiff does not seek to offer other evidence of the payment of the ticket.

      In order to determine whether this deposition testimony is admissible, the Court must answer two questions. First, is this statement barred by the prohibition on hearsay? *See* Fed. R. Evid. 801. Second, even if the testimony is not barred by the hearsay prohibition, does the testimony with respect to the payment of the fine run afoul of Federal Rule of Evidence 403? *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.") In particular, with respect to the second question, the Court must consider whether the probative value of the testimony is substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury. *Cf. Anthony v. Washington Metro. Area Transit Auth.*, No. 04-cv-622, 2005 WL 5329518, at *3 (D.D.C. Dec. 19, 2005) ("In balancing the probative value of that evidence against the potential unfair prejudice and confusion or misleading nature of the evidence, as envisioned by the drafters of F.R.E. Rule 403, the Court found that the probative value of Officer Griffin's testimony regarding issuance and payment of the citation was substantially outweighed by the danger of its unfair prejudice to the Defendant and the risk of misleading the jury.")

The Court's analysis of this question is informed by the D.C. Court of Appeals' discussion of the effect of the payment of a traffic fine with respect to the admissibility of that evidence. *See Johnson v. Leuthongchak*, 772 A.2d 249, 251 (D.C.2001). In *Johnson v. Leuthongchak*, the D.C. Court of Appeals considered the admissibility of "evidence of [the defendant's] payment by mail of the civil fine for a traffic ticket, given for allegedly failing to yield the right of way," in a subsequent related negligence action. *Id*. at 250 (footnote omitted). The D.C. Court of Appeals "follow[ed] the virtually unanimous holding of courts in this country rejecting such evidence" as barred by the prohibition on hearsay.[2] *Id*.

In its opinion, the D.C. Court of Appeals started from the premise that "[g]uilty pleas are generally admitted on the theory that they fall within the rule dealing with admissions by party-opponents." *Id*. at 250. *See* Fed. R. Evid. 801(a) (statements include conduct "intended as an assertion"). The D.C. Court of Appeals recognized that, in the District of Columbia, the payment of a traffic fine necessarily involves an admission of liability:

> It is true that in the District of Columbia, a person receiving a traffic ticket (formally termed a Notice of Infraction) must, by statute, respond in one of two ways. The person may "admit, by payment of the civil fine, the commission of the infraction" or "deny the commission of the infraction," and payment of the fine "shall be deemed a finding of liability."

*Leuthongchak*, 772 A.2d at 251. However, the D.C. Court of Appeals also recognized, based on real world experience, that the payment of a traffic fine does not actually imply a belief that one is guilty of the ticketed offense:

---

[2] The Court notes that, while the question before this Court today is governed by the Federal Rules of Evidence rather than the substantive law of the District of Columbia, the District of Columbia has "adopted the substance of Federal Rule of Evidence 801(d)(2) on 'admission by party-opponent.' " *Leuthongchak*, 772 A.2d. at 750. Accordingly, in addition to being a final statement of local law with respect to the substantive liability question, the holding of the D.C. Court of Appeals is persuasive on this particular evidentiary front as well.

> "[T]he mere remittance of payment in an effort to dispose of a traffic citation in the least intrusive manner possible is not necessarily indicative of a defendant's recognition of his or her own guilt . . . It is likely that even people who believe themselves innocent often pay preset fines for the sake of convenience or expediency rather than go to court and stand trial."

*Id*. at 251 (quoting *Briggeman v. Albert*, 586 A.2d 15, 17 (Md. 1991)). The D.C. Court of Appeals concluded that, even though the payment of the fine was, formally, a guilty plea, the evidence of the payment was rightly excluded. *See id*. at 251-52. Moreover, even though the appellate court only conducted an analysis with respect to Rule 801(d)(2), the appellate court noted the possibility of prejudice resulting from the admission of this evidence. *See id*. In other words, even if the law states that the payment of a fine necessarily involves the payor admitting guilt, it does not mean that such a payor actually believes himself or herself guilty. Accordingly, the admission of evidence of Defendant's payment of the fine in this case—without more— would certainly not be admissible. Although District of Columbia law specifies that Defendant's payment of the fine entailed an admission of guilt with respect to Defendant's failure to yield, it does not imply that the Defendant intended to communicate that he believed that he was, *in fact*, guilty.

Here, Plaintiff seeks to admit something arguably different—deposition testimony about the payment of a fine. However, the Court concludes ultimately that any arguable distinction is a distinction without a difference, and this testimony is similarly inadmissible. Plaintiff seeks to offer an excerpt from the deposition of Defendant in which Defendant testified with respect to his payment of the fine for failing to yield. In particular, Plaintiff seeks to admit the response that Defendant gave in the following exchange:

Q:     But did you confirm that there no points for this particular citation?

A:     Well, once I paid the fine, that was the end of the – that was admitting that, you know, I was at – the failure to yield.

Plaintiff argues that this testimony differs from the evidence considered in *Leuthongchak*—as well as analogous cases from other jurisdictions—because the Defendant here, Plaintiff argues, admitted having violated the law through his words rather than simply by virtue of his actions in paying a fine.[3]

Plaintiff is correct that the fact that her attempt to offer deposition testimony requires a variant on the legal analysis conducted by the D.C. Court of Appeals in *Leuthongchak*. Here, the question of whether Defendant's statement is barred by the prohibition against the admission of hearsay all but disappears. The statement that Plaintiff seeks to offer is one "offered against an opposing party" and "made by the party in an individual or representative capacity." Fed. R. Evid. 801(d)(2). Accordingly, this statement is not hearsay, *see id*., and it is admissible at trial unless prohibited by another Rule of Evidence, *see* Fed. R. Civ. P. 32(a) (enumerating criteria for use of deposition testimony at trial).

However, it remains for the Court to determine whether Defendant's statement survives the analysis required by Rule 403, balancing the probative value of testimony against the risk that the testimony will generate unfair prejudice, confuse the issues, or mislead the jury. *See* Fed. R. Evid. 403. In this context, Plaintiff argues that the statement is materially different than the mere payment of a fine. This argument fails. In the District of Columbia, as recognized in *Leuthongchak*, paying a fine entails that the person paying the fine " 'admit, by payment of the civil fine, the commission of the infraction.' " *Leuthongchak*, 772 A.2d at 251 (quoting D.C. Code § 40-615(a)). All that Defendant stated in the relevant portion of his deposition was the

---

[3] As an initial matter, Plaintiff's citation to *Turner v. Silver*, 587 P.2d 966 (N.M. Ct. App. 1978), is entirely unavailing. The Court need not delve any further into New Mexico law dating to more than thirty ago except to say that this opinion had no precedential weight in the first place. *See Southern Union Exploration Co. v. Wynn Exploration Co*., 624 P.2d 536, 540 (N.M. 1981).

following: "once I paid the fine, that was the end of the – that was admitting that, you know, I was at – the failure to yield." Pretrial Statement at 13. In other words, Defendant stated that paying the fine was equivalent to admitting he failed to yield, which was the subject of the ticket. The problem with Plaintiff's argument is that Defendant is correct: in the District of Columbia, paying the fine *was* admitting that he failed to yield. But as the D.C. Court of Appeals recognized, admitting that he failed to yield does not mean that he actually believed he failed to yield. " 'It is likely that even people who believe themselves innocent often pay preset fines for the sake of convenience or expediency rather than go to court and stand trial.' " *Leuthongchak*, 772 A.2d at 251 (quoting *Briggeman v. Albert*, 586 A.2d at 17).

Defendant's deposition statement is substantively no different than the statement implied in the payment of a fine. Accordingly, this statement does not survive Rule 403's balancing analysis. As explained above, the probative value is negligible—all the statement conveys is that the payment of the ticket was tantamount to a legal admission of guilt, but does not suggest anything about Defendant's actual beliefs about his behavior or his actual guilt. The Defendant's own words do not suggest that he himself believed he was guilty of the underlying offense. Insofar as there is any probative value in the oral statement that exceeds the statement implicit in paying the ticket, it is outweighed by the risks of jury confusion and unfair prejudice. In particular, the risk of confusion to the jury is high. Even if the legal context described here were put before the jury and even with the caveats that the law would require, the admission of the testimony would likely suggest to a jury that Defendant's statement means that Defendant *actually believed* that he had violated the law by failing to yield. Moreover, allowing Plaintiff to offer Defendant's statement creates a strong possibility of unfair prejudice to Defendant. Despite the legal difference between liability with respect to the traffic violation and liability in this tort

action, jurors may misunderstand Defendant's legal admission of guilt—even with caveats attached to it—as tantamount to the admission of liability in this lawsuit. *Cf. id.* (noting concern about "the excessive prejudicial effect of what [the Maryland Court] termed the 'backdoor' admission of police officer's opinion of guilt" through evidence of payment of fine).

Accordingly, the Court concludes that the deposition testimony of the Defendant with respect to Defendant's statement regarding his payment of a traffic fine is not admissible.

### B. Interrogatories

The parties' dispute here centers on discrepancies between Defendant's initial answers to interrogatories and his subsequent amended answers to the interrogatories, particularly with regard to Defendant's visual disability and any associated restrictions on his driving. It appears from the briefing that the parties dispute two matters: (1) whether the original answers are inadmissible because they were subsequently amended and (2) whether Plaintiff should be required to offer any supplemental answer together with the associated original answer pursuant to the "Rule of Completeness," as codified in Federal Rule of Evidence 106.

With respect to the first question, Defendant provides no justification for keeping the original answers from the jury. Defendant only offers excuses why he could not provide justifications at the time of the filing. *See* Def's [34] Interrogatory Mem. at 1-2. The Court is unconvinced. A limited number of answers were amended, and this dispute clearly centers on those amendments that pertain to Defendant's visual disability and associated driving restrictions. There is no reason that Defendant could not have responded adequately as required by this Court's previous order. Moreover, the Court is not aware of any authority that would prevent Plaintiff from offering the original answer, even if it were subsequently amended. The

Court concludes that both the original and the supplemental answers to the interrogatories are admissible.

With respect to the second question, the Court agrees with Defendant that, if plaintiff seeks to offer the original answers, the Rule of Completeness requires Plaintiff to offer the supplemental answers as well. *See Mangual v. Prudential Lines, Inc.*, 53 F.R.D. 301, 303 (E.D.Pa. 1971) ("[I]f the original answer is offered into evidence by the plaintiff, the amended answer must be offered into evidence at the same time if defendant so requires."); *Alexander v. Del Monte Corp.*, No. 09-12303, 2011 WL 91968, at *2 (E.D. Mich. Jan. 11, 2011); *see also* Fed. R. Evid. 106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time."). Moreover, this result comports with the provision of the Federal Rules of Civil Procedure allowing answers to be amended in the first place. *See* Fed. R. Civ. P. 26(e)(1) ("A party who has made a disclosure . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect."); *cf. Mangual*, 53 F.R.D. at 303 ("[I]t would seem that the amended answer must also be admissible in this situation if the purposes of amendments are not to be frustrated.").

## C. Police Report

In order to determine the admissibility of the police report, the Court must determine whether the document itself is admissible and, then, whether the information on that report is admissible for the purposes sought by Plaintiff, who seeks to offer the report.[4] Importantly,

---

[4] The Court notes that, while Plaintiff cites various cases from the District of Columbia Court of Appeals with regard to the hearsay implications of offering a police report into evidence, the

Defendant acknowledges that at least portions of the police report are admissible. *See, e.g.*,

Def.'s Response at 1 (factual observations admissible).

As an initial matter, the authenticity of the police report is not in question. Pursuant to

Local Civil Rule 16.5(b)(6), "Exhibits will be presumed to be authentic unless objection to their

authenticity is made at or before the final Pretrial Conference and the objection is sustained."

Plaintiff included the report in the Pretrial Statement as one of her exhibits. Pretrial Statement at

8. Defendant objected to it, but only "to the admissibility of the police report as the officer was

not a witness, it contains hearsay, and is not subject to admissible hearsay exceptions." *Id*. at 9.

Notably, Defendant did not object to the authenticity of the report itself. Moreover, after Plaintiff

responded to Defendant's objection in subsequent briefing requested by the Court, *see* Pl.'s

Supp. Br. at 3-5, Defendant further narrowed his objections in his subsequent response, *see*

Def.'s Response at 1-2. In particular, Defendant now concedes that certain portions of the report

are, in fact, admissible, including factual observations of the police officer. *See id*. at 1. Because

Defendant has forfeited any objections to authenticity, the Court concludes that no further

authentication is required at trial.

Given that the report is presumed to be authentic, Plaintiff is correct that the document

itself is admissible pursuant to the "business records exception" to the hearsay rule. Pursuant to

Federal Rule of Evidence 803(6), "Records of a Regularly Conducted Activity" are admissible if

they meet certain conditions specified in the Rule. Importantly, Defendant does not argue that

there is any concern with the trustworthiness of the report itself, nor is any such concern apparent

on the face of the evidence that Plaintiff seeks to present. *See* Fed. R. Evid. 803(6)(E) (records

---

Federal Rules of Evidence determine the evidence that can be admitted at trial—even though
District of Columbia substantive law governs this dispute.

admissible only if "neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness"). Indeed, as mentioned above, Defendant agrees that at least portions of the report are admissible. *See, e.g.*, Def.'s Response at 1.

However, the parties still disagree about which portions of the report are admissible. The Court first enumerates those portions of the report that both agree are *admissible* and those portions that both agree are *inadmissible* (or Plaintiff does not seek to admit); the Court subsequently analyzes the disputed elements. The parties agree that the following items are admissible:

- Certain factual findings based on observations of police officer, including time of arrival, identification of the parties, weather conditions, and the date of the report.
- Identification of witnesses that testify at trial.

Alternatively, the parties also agree that the report could be used to refresh the testifying officer's recollection as to information within the report that reflects the knowledge of the officer at the time of the report. *See* Fed. R. Evid. 803(5). The parties also agree that the following information is inadmissible:

- The section noting "Police Action," and indicating that Defendant was charged with "Fail to Yield Right of Way to Pedestrian."
- Certain information from the narrative, discussed further below.
- The diagram of the incident: because "the present version of the crash diagram is not clear enough to read," Plaintiff agrees that it should be redacted.

Were the Plaintiff to obtain a copy of the report that includes a legible version of the diagram, the Plaintiff must *expeditiously* inform both the Court and Defendant and must demonstrate that the diagram itself would not be barred as hearsay given that no police officer observed the collision occur.

With respect to the Detailed Narrative, Plaintiff argues that a portion of it should be admitted while Defendant argues that none of the narrative is admissible. The Court concludes

that, based on the proposed exhibit before the Court, none of the narrative is admissible. The

following is the entire text insofar as it is legible on the copy of the report available:

> D1 was traveling through the intersection at 19th St. and Pennsylvania Ave NW,
> from 19th Street, Southbound. P1 was [omitted] the crosswalk in the 1800 block
> of Pennsylvania Ave near the intersection at 19th St. NW. D1 turned left (E/B)
> onto the [omitted] Pennsylvania Ave NW, into the crosswalk and struck P1. P1
> complained of injury to her right hip, right ankle, and [illegible] [omitted]
> transported by DCFD to Amb#[illegible] to the GW University Hospital. D1 did
> not have the right of D1 did not have the right of way to turn left while pedestr[]
> [omitted] crosswalk. P1 had the right of way per the marked crosswalk and the
> "Walk, Don't Walk" signal device. D1 was issue a [omitted] right of way to
> pedestrian.

See Notice on Police Report Exhibit, ECF No. [41], Ex. at 2 ("Police Report"). The Court notes

that the text on the right margin of the report appears to be cut off and that certain words are

illegible.

Plaintiff agrees that first two sentences, describing the incident, are inadmissible, unless

the officer testifies to personal knowledge of the incident. See Pl.'s Supp. Br. at 4 (bullet no. 5).

Because the parties agree that the reporting officer did not personally observe the incident, the

Court agrees that these sentences must be redacted.

Plaintiff argues that the next portion of the narrative is admissible, beginning with the

statement that "P1 [Plaintiff] complained of injury to her right hip, right ankle and [illegible.]"

See id.; Police Report at 2. The end of the sentence describing Plaintiff's injuries is both illegible

and cut off. While Plaintiff argues that this "does not appear to be hearsay," she does not provide

any justification for this conclusion. This statement can only be admissible in the first place if the

officer testifies to having heard Plaintiff's complaint of her injury, and the report does not

explicitly say that Plaintiff complained to the officer directly about these medical symptoms.

Furthermore, in order for this statement to be admissible, Plaintiff must point to one of the

hearsay exceptions that would allow her underlying statement to be admitted, which she has not

done. Moreover, because a portion of the narrative appears to be cut off, the jury would be left examining a mere sentence fragment in the midst of the narrative. Without a more complete copy, the Court concludes that this fragment fails the balancing test of Rule 403. The police report would have negligible probative value because the officer's testimony, together with the testimony of the treating medical professionals, could replicate anything that the jury could glean from this fragment. *See* Fed. R. Evid. 403. At minimum, admitting this portion of the narrative would be confusing to the jury. Moreover, even in Plaintiff's view, the jury would be faced with a significantly redacted narrative. Asking the jury to fill in missing words in this statement could easily engender needless and possibly prejudicial speculation by the jury about the redacted portions. In other words, the Court concludes that that the negligible probative value of this testimony is "substantially outweighed" by a danger of confusing the jury, possible prejudice, and needlessly presenting cumulative evidence, and therefore it is excluded. *Id*.

Similarly, Plaintiff seeks to admit the subsequent statement: "transported by DCFD to Amb#[illegible] to the GW University Hospital." Police Report at 2. Defendant objects to the inclusion of any of the narrative, as hearsay. *See* Def.'s Response at 1-2. Like the statement referencing Plaintiff's injuries, this statement is also a sentence fragment that is not intelligible without inferring what might have been written in the gaps in the exhibit before the Court. If the police officer testified to personally observing this transport, this statement would not be barred by the hearsay rule; however, it would still fail Rule 403's balancing test for similar reasons as the preceding statement in the narrative, which pertains to Plaintiff's injuries. *See* Fed. R. Evid. 403. Putting this narrative before the jury would require them to fill in the gaps and would needlessly increase the danger of the jury speculating about what was contained in the redacted text. As with the statement describing Plaintiff's injuries, the officer could testify directly as to

the transport, rather than relying on the police report. It also does not appear that Plaintiff being transported by an ambulance is factually disputed. Thus, the negligible probative value of this partial statement is substantially outweighed by the risk of confusing the jury and unfair prejudice. This statement, too, is excluded.

Finally, Plaintiff implicitly agrees that the final two sentences should be redacted. *See* Pl.'s Supp. Br. at 4. Since Plaintiff agrees that the "Police Action" section of the report must be redacted, it is similarly necessary to redact the portion of the narrative that appears to present the officer's legal conclusion that Defendant violated the traffic laws and reports the officer's issuance of a ticket to Defendant. Insofar as some of this information may not be barred by the hearsay rule, it is far more prejudicial than probative and is inadmissible pursuant to the balancing test of Rule 403. *See* Fed. R. Evid. 403. This conclusion is consistent with the Court's conclusion, discussed above, that the deposition testimony regarding Defendant's payment of the ticket is inadmissible.

To summarize, the following sections of the police report must be redacted before the report can be admitted:

- Police Action
- Crash Diagram
- Detailed Narrative

*Accordingly, the parties shall jointly redact the police report in accordance with these conclusions and shall bring the accordingly redacted report to the December 1, 2014, status hearing.* The Court notes that, for the sections that must be redacted in full, the names of those sections must be redacted as well.

**D. Plaintiff's Medical and Hospital Records**

The additional briefing requested by the Court has substantially clarified the parties'
intended uses of Plaintiff's medical and hospital records. First, the Court's understanding is that
Plaintiff does not intend to offer the medical or hospital records for substantive evidence. *See*
Pl.'s Supp. Br. at 5. Instead, Plaintiff only intends to offer the records on re-direct insofar as
Defendant attempts to use them for impeachment purposes on cross-examination. *See id*. Second,
it is the Court's understanding that Defendant only intends to use the medical and hospital
records during cross-examination for impeachment purposes – not as substantive evidence. *See*
Def.'s Response at 2. There is no dispute that Defendant may use these records for impeachment
purposes, assuming that they are within the scope of proper cross-examination. Moreover, it
appears that there is no dispute that Plaintiff may use those and additional records, on re-direct,
to rebut Defendant's attempts at impeachment. Plaintiff may use additional records to put the
records offered by Defendant into context, as Plaintiff seeks, as long as Plaintiff confines her
usage of these materials to the proper scope of re-direct examination with regards to
impeachment.

*At the December 1, 2014, status hearing the parties should be prepared to confirm that
this analysis accurately reflects their positions or to clarify their positions as necessary. The
parties should bring the medical records in question to the hearing in order to be fully prepared
for that discussion.*

**E. Video Recordings**

Plaintiff proposes to display video footage of the traffic signals and the intersection
where the collision occurred. Although the Court addresses the videos here, the Court first notes
that it expects this question will require additional discussion at the December 1, 2014, status

hearing. The Court is in possession of two videos delivered during the summary judgment briefing. The first, filename VIDEO0019.3GP, is a 49 second video that shows a view across Pennsylvania Avenue towards a pedestrian signal at the intersection in question. The second, filename IMG_0973 Stehn.mov, is a 24 second video that shows a pedestrian signal and traffic light, but only a minimal view of the intersection. Both videos show all three phases of the pedestrian signal: a flashing person (in white), accompanied by a countdown timer; a flashing orange hand, accompanied by the continuation of the countdown timer; and a steady orange hand (without a timer). It appears that both videos were taken around February, 2012, *see* Pl.'s Response at 5 n.4, approximately three-and-a-half years after the underlying incident.

The parties note – and do not dispute – one key discrepancy between the signal at the time of the incident and both videos. At the time of the incident, the signal featured a flashing orange person, while at the time of the video the signal featured a flashing orange hand. The parties agree that meanings of these two visual representations are the same. *See* Pl.'s Supp. Br at 6-7. Videotape evidence is categorized as photographic evidence under Federal Rule of Evidence 1001(2). "Photographs are admissible 'even when they contain points of difference between the time of taking and the time of the accident or injury, provided such differences are disclosed by the testimony and made clear to the jury.' " *Rogers v. Ingersoll-Rand Co.*, 971 F. Supp. 4, 14-15 (D.D.C. 1997) *aff'd*, 144 F.3d 841 (D.C. Cir. 1998) (citations omitted). Accordingly, if this difference is explained to the jury, the hand-person discrepancy need not bar the admission of this evidence on its own.

The Court now addresses the two videos in turn. The first video, which shows a broader view of the intersection together with the pedestrian signal, presents two serious difficulties. First, it appears to the Court that this video looks across the intersection from the southeast

corner to the northeast corner even though Plaintiff was walking in the opposite direction (southbound). In other words, the video shows a view of a pedestrian signal that is not the same as the one that governed Plaintiff's movement or that Defendant would have seen. Even if the video was offered to show that the relevant signal in this dispute operated in the same fashion as the signal captured in the video, it is highly misleading to show a signal that does not represent what either party saw. Second, the video shows the movement of traffic through the intersection, but Plaintiff does not and cannot represent that the traffic flows were the same during the incident as in the video. Indeed, there is specific testimony from the Defendant that there were two cars in front of him also turning, which are not represented as such in the video. *Cf. United States v. Lawson*, 494 F.3d 1046, 1052 (D.C. Cir. 2007) ("According to the testimony of Wallace—the only witness at trial with knowledge of the scene—the photographs did not accurately reflect what he saw."). Perhaps unintentionally, the positioning of the camera and the resulting scope of the video is likely to focus the attention of the viewer on the flow of traffic, which occupies a significant portion of the field of view shown in the video, creating the risk that the jury would draw potentially misleading conclusions regarding the traffic at the time of the collision. Accordingly, because the Court concludes that this video does not fairly and accurately represent the intersection as the parties faced it in 2008 and that it runs the risk of misleading and confusing the jury, this video is inadmissible. Moreover, a diagram of the intersection to show the lanes and the positioning of the parties can be used with the "Elmo," and the witness can mark such an exhibit while testifying.

      The second video, which focuses on a pedestrian signal and a traffic light, does not present either of the two serious problems of the previous video. First, this video appears to portray only the set of signals facing both Plaintiff and Defendant: the pedestrian signal that

governed Plaintiff's movement across the street and the traffic light that governed Defendant's left turn through the intersection. In addition, because this video "zooms in" on the lights themselves, it does not focus the viewer's attention on the movement of traffic—even though the flows at the time of the video would have been different from those at the time of the incident. Although some cars are visible in this video, they appear ancillary rather than central to the scene that the video captures. That said, it is unclear to the Court whether this signal operated in the same way as the signal in place at the time of the incident, and it is not clear what the probative value of this video is in any event. With these considerations in mind, the Court will discuss this video at the December 1, 2014, status hearing. As a final note, the video is "sideways" – rotated 90 degrees from the appropriate orientation. Although it possible to evaluate the video in its current state, it is the Plaintiff's obligation to provide a copy of the video in the correct orientation such that the Court can evaluate it fully and such that it can be shown effectively at trial. *Plaintiff shall provide the Court with a copy of the video oriented vertically as expeditiously as possible, but no later than the December 1, 2014, status hearing.*

Lastly, it is unclear to the Court whether the parties intend to use any other demonstrative evidence at trial. *At the December 1, 2014, status hearing, the parties should be prepared to discuss whether they intend to use other demonstratives and whether they object to the other party's use of such demonstratives, if any.*

## IV. CONCLUSION

In summary, for the foregoing reasons, the Court has arrived at the following conclusions with respect to the evidence considered here:

- The deposition colloquy regarding Defendant's payment of the fine is inadmissible.

- With respect to the interrogatories, both Defendant's initial answers and Defendant's amended answers to the interrogatories are admissible. The Rule of Completeness requires offering the amended answers together with the initial answers.

- With respect to the police report, the Court concludes that, based on the report currently before the court, the "Police Action," "Crash Diagram," and "Detailed Narrative" sections must all be redacted.

- With respect to the medical and hospital records, Defendant may use them for impeachment purposes, and Plaintiff may use them to rebut Defendant's attempts at impeachment – as described in more detail above.

- With the respect to the video recordings, the video of the traffic signal and the pedestrian signal will require further discussion at the December 1 status hearing. The video showing the pedestrian signal with a wide view of the intersection is inadmissible.

The Court expects the parties to come to the December 1, 2014, status hearing prepared to discuss these matters and prepared with the materials that the Court requests above.

Dated: November 20, 2014                              /s/

                                                      COLLEEN KOLLAR-KOTELLY
                                                      United States District Judge